# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**AIDA COLON-HERNANDEZ**
*for Oscar Castrodad*,
    **Plaintiff**,

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**Civil No. 17-1456 (ADC)**

## **OPINION AND ORDER**[1]

### I.    **Procedural History**[2]

Castrodad filed an application for disability benefits ("SSA case") on November 9, 2010, before the Social Security Administration ("SSA") based on his alleged disability due to high blood pressure, various cerebral strokes in 2009 and 2010, gout on both feet, and stress. The SSA denied Castrodad's application initially and upon reconsideration. Plaintiff filed a request for a hearing, which the SSA granted. An Adminisrtrative Law Judge ("ALJ") held an evidentiary hearing in San Juan, Puerto Rico, on July 18, 2012, in which Castrodad, a medical expert and a

---

[1] On September 28, 2018, the Court entered an Order, **ECF No. 26**, fully adopting U.S. Magistrate Bruce J. McGiverin's Report and Recommendation ("the R&R") recommending that the Court affirm the Commissioner of Social Security's ("the Commissioner"). *See* **ECF Nos. 24, 26**. The Court's Opinion in support of its Order is contained herein.

[2] The Court draws the procedural history summarized herein from pertinent sections of plaintiff's memorandum of law, the Administrative Law Judges' decisions, the Magistrate Judge's R&R, and other portions of the administrative record ("transcript" or "**Tr.**"). **ECF Nos. 18**, **24**; **Tr.** at 19-33, 103-118, 757-759.

vocational expert testified. On October 4, 2012, the ALJ issued a written decision finding that Castrodad was disabled since October 4, 2010, the date when he suffered the stroke that required emergency hospitalization.

In 2013, the U.S. Department of Justice and the SSA's Office of the Inspector General conducted a criminal investigation about Social Security fraud in Puerto Rico. As a result of the same, various physicians and others were criminally charged and indicted, including Samuel Torres-Crespo ("Torres"), a non-attorney representative in Castrodad's SSA case. Torres pled guilty for having made "false statements or other misrepresentations to [the] SSA in claimants' applications for benefits." **Tr.** at 19. Since Torres had provided evidence in Castrodad's proceedings upon which the ALJ had relied in finding that Castrodad was disabled, on February 16, 2016, the SSA notified Castrodad that upon reviewing his case, and without considering the evidence presented by Torres, "[t]he prior decision in your case that you are disabled may not be supported. By law, SSA must redetermine your case, which means that we will again decide whether you were disabled as of August 10, 2012, the date you were originally awarded benefits." *Id.* at 20.

Plaintiff timely filed a request for party substitution on behalf of Castrodad, who had died on January 15, 2016, of pneumonia. The SSA assigned the case to a different ALJ, who held a video hearing on July 8, 2016, in which plaintiff and an impartial vocational expert testified. According to the ALJ, in adjudicating the case, he disregarded the evidence provided by Torres,

but "considered all remaining evidence that relates to the period on or before the date the beneficiary was originally awarded benefit." *Id.* at 2. On September 13, 2016, the ALJ issued a written decision finding that in the relevant period—from Castrodad's filing for SSA benefits on October 4, 2010, until the granting of the same on October 12, 2012—Castrodad was not disabled under SSA standards. Plaintiff opportunely appealed the ALJ's decision, the SSA Appeals Council denied her request for review, and plaintiff timely filed the instant complaint. The Court referred the case to U.S. Magistrate Judge Bruce J. McGiverin ("Magistrate Judge") for the issuance of an R&R, the parties filed legal memoranda, the Magistrate Judge issued his R&R, and plaintiff timely filed an objection. **ECF Nos. 18, 23, 24, 25**.

## II. Standard of Review

A district court may refer pending civil actions or proceedings to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Local Civ. R. 72(a). The court is free to accept, reject, or modify, in whole or in part, the findings or recommendations by the magistrate judge. 28 U.S.C. § 636(b)(1); *see Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985); *Alamo-Rodríguez v. Pfizer Pharm., Inc.*, 286 F. Supp.2d 144, 146 (D.P.R. 2003). A party is entitled to a de novo review of "those portions of the report . . . to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F. Supp.2d 189, 191-92 (D.P.R. 2005) (citing *United States v. Raddatz*, 447 U.S. 667 (1980)).

However, a plaintiff's objections to an R&R "are not to be construed as a second opportunity to present the arguments already considered by the Magistrate Judge." *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp.2d 32, 34 (D.P.R. 2004). As held in this District,

> "If the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel, consistent with the [Federal Rule of Civil Procedure], can in good conscience complain to the district judge that an objection to a particular finding or recommendation is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."

*Id*. (quoting *Sackall v. Heckler*, 104 F.R.D. 401, 402-403 (D.R.I. 1984)). Accordingly, absent a proper objection, the Court "needs only satisfy itself that there is no plain error on the face of the record" in order to adopt the magistrate judge's findings. *López-Mulero v. Vélez-Colón*, 490 F. Supp.2d 214, 217-218 (D.P.R. 2007). "[A] party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals." *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998).

## III. Discussion

Plaintiff asserts in her objection to the R&R that the Magistrate Judge erred in affirming the Commissioner's finding of not disabled regarding Castrodad. **ECF No. 25**. Specifically, plaintiff avers that in determining Castrodad's Residual Functional Capacity ("RFC"), the ALJ "repeadetly substituted sound medical opinions for his own interpretations of the medical evidence and raw medical data," in violation of applicable legal requirements. *Id.* at 4, 5-8.

Plaintiff also contends that the ALJ misapplied leading case law in his analysis and determinations as to Castrodad's capability to work. *Id*. at 3-4.

A review of plaintiff's objection to the Magistrate Judge's R&R reveals that it is a rehash of the aforementioned arguments already expounded in plaintiff's memorandum of law in support of her complaint against the Commissioner. *See* **ECF Nos. 18** at 11-19, **25** at 3-9. Thus, plaintiff has waived a right to de novo review as to her objection to the R&R, which consequently is subject to clear-error review only. *See Betancourt*, 313 F. Supp.2d at 34. Pursuant to that standard and upon reviewing the R&R in light of the case's record, the Court holds that the Magistrate Judge's findings of fact and law are correct. Nonetheless, in an abundance of caution, below is the Court's de novo review of plaintiff's objection to the R&R. To avoid needless repetition, the Court hereby adopts and wholly incorporates by reference the Magistrate Judge's summary of legal standards and analysis of the case at hand, as contained in the R&R. **ECF No. 24**. Those standards and analysis are highlighted below as deemed pertinent by the Court in its discussion of plaintiff's objection to the R&R.

1- **The ALJ's RFC Assessment Regarding Castrodad is based on Substantial Medical Evidence on the Record as a Whole.**

The denial of social security disability benefits must be upheld provided that the Commissioner of Social Security ("the Commissioner") has committed no legal or factual errors in evaluating a claim. *Manso–Pizarro v. Sec. of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). An ALJ's findings of fact are upheld if supported by substantial evidence in the record as

a whole, which means "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Astralis Condo. Ass'n v. Sec., U.S. Dep't of Housing & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010) (internal quotation marks omitted) (involving review of a final order of the Secretary of Housing and Urban Development). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez-Pagán v. Sec. of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

Plaintiff has the burden of proving that Castrodad became disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301-1307. *See Bowen v. Yuckert,* 482 U.S. 137, 146 (1987); *Rodríguez–González v. Astrue,* 854 F. Supp.2d 176, 179 (D.P.R. 2012). A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. § 416(i)(1). In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity. *See McDonald v. Sec. of Health & Human Servs.*, 795 F.2d 1118, 1120 (1st Cir. 1986); *Quintana v. Commissioner of Social Security,* 294 F. Supp.2d 146, 148 (D.P.R. 2003).

In deciding whether a claimant is disabled under SSA standards, the Commissioner must use a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4); *See Yuckert,* 482 U.S. at 140–42; *Goodermote v. Sec. of Health and Human Services,* 690 F.2d 5, 6–7 (1st Cir. 1982).[3] In the instant case, the ALJ applied the aforementioned process,[4] first holding that Castrodad was an SSA-insured individual who had not engaged in any substantial gainful activity during the relevant period. Second, he concluded that Castrodad "was significantly limited in his ability to carry out a full range of basic work activities by the following severe combination of impairments: s/p multiple cortical and subcortical cerebral infarcts; mild expressive aphasia; hypertension; hyperlipidemia; and left ventricular hypertrophy." **Tr.** at 23.

Third, the ALJ held that "even in combination, the beneficiary's impairments did not meet or medically equal . . . the severity of one of the listed impairments" in the pertinent regulations.

---

[3] Specifically, the five-step sequential evaluation process entails the following, 20 C.F.R. § 404.1520(a)(4):

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . . .
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . . .
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled . . . .
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . . .
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled . . . .

[4] *See* Tr. at 21-32.

*Id*. at 25 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. 404.1525; 20 C.F.R. 404.1526). Consequently, the ALJ proceeded to assess Castrodad's RFC, as required under the fourth step of the sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

The RFC is an "assessment of the claimant's remaining capabilities to perform physical and mental activities after considering the full restrictions resulting from the individual's impairment." Soc. Sec. Disab. Claims Handbook § 2:29 (May 2018 Update). As required under applicable regulations, "[i]f the claimant has more than one impairment, all of the medically determinable impairments, including medically determinable impairments that are not 'severe,' will be evaluated." *Id*. at n.1 Moreover, "[t]he determination of residual functional capacity is an assessment based on all of the relevant medical and other evidence." *Id*.; *see* 20 C.F.R. § 404.1512. And while the ALJ shall consider medical sources in assessing the RFC and whether a claimant is disabled to work, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2).

In assessing a claimant's RFC, an ALJ may not "substitute[ ] his own judgment for uncontroverted medical opinion." *Rosado v. Sec. of Health and Human Services*, 807 F.2d 292, 293–94 (1st Cir. 1986). Nonetheless, it is the province of Secretary of Health and Human Services in social security disability proceedings to resolve conflicts in medical evidence. *Rodríguez-Pagán*, 819 F.2d at 4; *Barrientos v. Sec. of Health and Human Services*, 820 F.2d 1, 2-3 (1st Cir. 1987). Accordingly, when, as in the case at hand, the ALJ is faced with voluminous medical evidence

that entails diverse opinions by treating and consultive physicians, the ALJ is required to determine credibility, bestow degrees of evidentiary weight, draw inferences from the record, and reach informed conclusions in light of the record as a whole to reach a RFC determination. *See Ortíz v. Sec. of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991); *Evangelista v. Sec. of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987); *Rodríguez-Pagán*, 819 F.2d at 2-3. In that respect, applicable regulations and case law provide the criteria that ALJs shall use to evaluate and award evidentiary weight to diverse or conflicting medical data when determining a claimant's RFC. *See* 20 C.F.R. § 404.1527; *see also, e.g., Olmeda v. Astrue*, 16 F. Supp. 3d 23, 30-31 (D.P.R. 2013); *Rodríguez-González v. Astrue*, 854 F. Supp.2d 176, 184-185 (D.P.R. 2012); *Mercado v. Commissioner of Social Security*, 767 F. Supp.2d 278, 285 (D.P.R. 2010).

In the instant case, the ALJ examined extensive medical evidence in assessing Castrodad's RFC, including records by: (i) treating neurologist Teresa Castro ("Dr. Castro"), with whom Castrodad underwent treatment throughout the relevant period after his stroke in August 2010; (ii) Dr. José Padilla ("Dr. Padilla"), cardiologist and internist who treated Castrodad during the relevant period; (iii) Dr. Glenn Garayalde ("Dr. Garayalde"), a consultative neurologist who issued a report on Castrodad's state in April 2011; (iv) Dr. Juan Batista ("Dr. Batista") and Dr. Carlos Vázquez ("Dr. Vázquez"), consultative psychiatrists who performed psychiatric evaluations of Castrodad in February and March 2011, respectively; (v) Dr. Florentino Figueroa ("Dr. Figueroa"), consultative internist who performed an evaluation of Castrodad in April 2011;

and (vi) records from Hospital Metropolitano, where Castrodad was admitted and treated for his stroke in August 2010, and Hospital HIMA San Pablo, where he died of sepsis, secondary to pneumonia, in January 2016. **ECF No. 24** at 3-9; **Tr.** at 23-30, 874-1215. The ALJ concluded that based on his assessment of Castrodad's RFC, he was capable of performing "light work with no fast paced demands,"[5] given the limitations resulting from his conditions.[6] **ECF No. 24** at 12; **Tr.** 25-26. The ALJ then determined, based on Castrodad's RFC and the testimonies of plaintiff and a vocational expert, that Castrodad "was capable of performing his past relevant work as a claims supervisor," **Tr.** at 30, as well as other work sufficiently available nationally and in Puerto Rico, for which he was not disabled under SSA standards. *Id*. at 30-32.

In her objection to the R& R, plaintiff contends that the ALJ's RFC analysis is "not supported by the medical evidence as a whole," because the ALJ "repeatedly substituted sound medical opinions for his own interpretation of the medical evidence and raw medical data." **ECF**

---

[5] As defined in pertinent regulations, "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 29 C.F.R. § 404.1567.

[6] As held by the ALJ, **Tr.** at 25-26, during the relevant period, Castrodad

> had the [RFC] to lift, carry, push, pull up to 20 pounds occasionally and 10 pounds frequently; sit for a total of up to six hours a day; and stand and/or walk for a total of six hours a day. He was not able to climb ladders, ropes, or scaffolds, but was able to occasionally climb ramps and stairs. He was able to occasionally balance a stoop, but never crouch, kneel, or crawl. In a work setting, the beneficiary would have needed to avoid all exposure to wetness . . . hazards . . . [and] concentrated exposure to extreme heat. He could not have done any driving of vehicular equipment. He was not able to do fast pace production work.

**No. 25** at 4. Plaintiff also asserts that the ALJ did not take into consideration Castrodad's speech impediment. *Id.* In the R&R, the Magistrate Judge held that "the ALJ's analysis of the medical record is plagued with assumptions of what happened during the time period, and the ALJ questions the knowledge [that] each treating source had at the time regarding Castrodad's conditions." **ECF No. 24** at 16. Plaintiff's and the Magistrate Judge's assertions in that respect gave the Court pause as to the correctness of the ALJ's factual and legal conclusions regarding Castrodad's conditions and his RFC. Nonetheless, after a thorough review of the AJL's decision and pertinent evidence in the transcript,[7] the Court wholly agrees with the Magistrate Judge's conclusion that "excluding these assumptions integrated by the ALJ in his opinion, the thorough discussion of the evidence at **Tr.** 27-30 is sufficient to give the court notice of the evidence [the ALJ] considered and serves as 'good reasons' for the weight the ALJ gave each treating source." *Id.* at 17. As concisely stated by the Magistrate Judge,

> To be sure, a medical report by Dr. Castro, dated December 2010, shortly after the last stroke, reveals that Castrodad had problems performing work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, and speaking, and limited ability to use his right (dominant) hand. As to his ability to speak, Colón reported in 2010 and testified in 2016 that the stroke affected Castrodad's speech and he felt uncomfortable and anxious communicating with others because he could not concentrate and would forget words, that he needed help with his personal needs, and that he could go out and drive. Importantly, however, Dr. Castro's 2011 record then shows improvement after receiving physical and speech therapy. He still had mild expressive aphasia, but felt better, was alert and oriented, and had full motor strength. Dr. Batista, a consultative psychiatrist that examined Castrodad in February 2011, also observed him walking at a normal rate without any motor deficit. His speech was audible,

---

[7] *See* **Tr.** at 19-33, 41-78, 874-1215.

> coherent, and logical; he did not present psychomotor retardation; and his memory, attention, concentration, judgment, and introspection were adequate. On April 2011, Dr. Garayalde, consultative neurologist, found that Castrodad's coordination, motor skills, ability to sit, walk, climb, and use his hands were normal, except for a limited ability to write. Castrodad also informed Dr. Garayalde in 2011 that he could drive and mow the lawn. He also showed some expressive aphasia and slow mentation. These findings strongly support the ALJ's determination.

*Id.* at 17-18. In short, the ALJ's decision that Castrodad's RFC allowed him to engage in light work during the relevant period is supported by substantial evidence on the record as a whole, in compliance with applicable legal standards.

**2- The ALJ Applied Correct Standards in Adjudicating the Fifth Step of the Sequential Evaluation Process.**

As summarized above, in the final step of the sequential evaluation process, the Commissioner considers the claimant's RFC as well as his age, education, and work experience to determine if he can make an adjustment to other work existing "in significant numbers in the national economy (either in the region where [the claimant lives] or in several regions in the country)." 20 C.F.R. 404.1560(c); *see also* 20 C.F.R. 404.1512(b)(3). In her objection to the Magistrate Judge's R&R, plaintiff avers that the Magistate Judge erred, "as the ALJ did before him," by not applying to his analysis under the fifth step of the sequential evaluation process the First Circuit holding in *Figueroa-Rodríguez v. Sec. of Health and Human Services*, 845 F.2d 370, 372 (1 st Cir. 1998). **ECF No. 25** at 3-4. In said case, the First Circuit held that just because "jobs exist in significant numbers in the national economy for one fluent in English" does not mean

that "they must similarly exist in significant numbers in Puerto Rico and elsewhere in the nation for a person of similar age, education, and vocational background fluent in Spanish." *Figueroa-Rodríguez*, 845 F.2d at 372.

However, the Court notes that at the hearing presided by the ALJ, he considered the testimony of an impartial vocational expert, retained by the SSA, who is knowledgeable of the Puerto Rico labor market. *See* **ECF No. 24** at 11; **Tr.** at 58-66. Based on said testimony, the ALJ concluded that during the period under consideration, considering Castrodad's age, education, work experience, and RFC, he was capable of performing both his prior relevant work as well as other work that existed in significant numbers in Puerto Rico. Specifically, it was considered he could perform as information clerk and order clerk. **Tr.** at 30-32, 57-66. Accordingly, the Court holds that the ALJ applied proper standards in adjudicating the fifth step of the sequential evaluation process, deciding properly that Castrodad was not disabled. *See Arce Crespo v. Sec. of Health and Human Services*, 831 F.2d 1, 5-6 (1st Cir. 1987) (affirming the Commissioner's decision of not disabled based on a vocational expert's testimony as to the existence of sufficient jobs in the Puerto Rico economy that claimant was able to perform).

IV. **Conclusion**

After careful consideration of the law, the record, the parties' pleadings and memoranda, the R&R, and plaintiff's objection to the same, the Court wholly **ADOPTS** the Magistrate Judge's findings and recommendations at **ECF No. 24**. Accordingly, the Commissioner's decision in the

instant case is hereby **AFFIRMED**, and the instant complaint, **ECF No. 1**, is **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

At San Juan, Puerto Rico, this 9th day of October 2018.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**